Thank you, Your Honor. May it please the Court, I'm Don Scarmastro on behalf of the Appellant and possibly Burt Sacks. One housekeeping matter, I've been asked to advise the Court that Mr. Sacks will take advantage of the opportunity to speak at the conclusion, not my 20 minutes, but at the conclusion of my reply arguments, as opposed to... How has counsel divided this up? My understanding is we are going to present the opening argument and then we will present a reply. The last word will go to the government in a reply. So we propose to have Mr. Sacks speak before the government begins its rebuttal argument. All right. Well, watch the clock. I will. Because we've said he could speak only if you allocated him your time to speak. And I understand. All right. And will the Court clerk start it at 20 minutes again, since we took care of that housekeeping matter for a minute? Thank you, Your Honor. Before I begin, I thought I would outline a couple of points that I think are worth highlighting and I intend to highlight today, obviously subject to the Court's questions. I wanted to begin by emphasizing that the allegation here at its nub is that the agency has failed to implement a meaningful opportunity or a meaningful exception to its sanctions regulations. What I intend to do during the course of my argument is first clarify, to the extent it needs clarifying, what it is we are asking the Court to do and how we see the case proceeding if the Court grants the relief we request. Could you speak up a little bit? I'm sorry. I'm getting feedback here, so I'm... We're not, so go ahead. So the first order of business is to clarify what relief we're seeking, how that would affect the proceedings if our relief is requested, is granted. Second, I want to talk briefly about the government's standing arguments and really focus on their interplay with the rules that govern Rule 12b6. It seems to me that the government in its briefing has narrowly construed our complaint in an effort to avoid standing. And the other thing I think that's worth spending a minute doing, and I intend to do that, is to put where this case stands on that spectrum of pre-enforcement standing cases that run, I think, from this Court's en banc decision in Thomas through the Jacobus case, both of which are cited by the government. I'll talk briefly for a minute about the congressional statutes that apply and limit executive authority. Well, we ask questions, so you're way down on an organizational list, which I appreciate. Let me move on. You may want to get to the substance. So much for the tour guide. Anyway, the relief we're requesting is we're asking for three holdings from the Court. First, that the agency lacks authority to impose a complete embargo on humanitarian donations. But did it impose a complete embargo? I thought it was a licensing. Our allegation is that the agency has failed to provide a meaningful way for humanitarian donations to get there. Has humanitarian applied for a license? I'm sorry? Mr. Sachs? Well, Mr. Sachs, he's the person before us. Did he apply for a license? He did not apply for a license before he went. So how do we know? I understand you have FOIA requests, FOIA requests, but how do we know that had he gone through the process, he wouldn't have been able to get a license? At this point, we're limited to, again, and this is one of the themes you're going to hear from my argument throughout, we're limited to a review of Mr. Sachs' allegations. So far, what we've alleged is that OFAC imposes, and its regulations has no articulated standards by which it would consider such a license. There is no articulated timeframe by which it would grant or even just decide an application for a license. Okay. But just so I can understand, you're saying you started out by saying that they couldn't impose an exclusion, a total ban in effect, and now we're talking about whether there is a real licensing procedure in effect. If they had a licensing procedure in effect, then that would comport with the U.N. resolutions, at least 666, I think the second one, would it not? I agree that if there were a licensing regime that timely and accurately processed applications for licenses, we, that would comply with the U.N. Participation Act. And, of course, the allegation here is that it does not. The agency, of course, insists on page 30 of its brief that, yes, it does. Ultimately, we're at the Rule 12b6 stage. We've been denied any efforts to obtain information on how the licensing. Has the agency ever issued a license or has an agency ever allowed a humanitarian group to go into Iraq and bring medical supplies? I don't know for sure. The only one that I have heard, and this is not in the record, is that the American Service Friends. It's not in the record. It's not going to help us. Well, that's fine. We don't know whether and under what circumstances any licenses might have been granted. We only know we've heard to the grapevine, which is not encouraging. And did Mr. Sachs even try to get a license? No, he did not, Your Honor. Did he ask permission in any way from the government? No, he did not. Let me turn to one other preliminary issue, but it may be very significant. That has to do with standing. I can see the standing in your argument for his travel. That's easy. The more difficult one is the standing argument for the medical supplies. And without that standing, of course, we're not going to get to any major issue in this case. Now, if I understand correctly, there has to be something that occurs after 1999 because of statute of limitations. The only thing that's been pointed to in the records comes from the excerpt of record at 6, where it says Mr. Sachs has met with other U.S. citizens in Iraq to highlight the effects of the U.S. policy there. Probably the best among them is United States Representative Jim McDermott, who traveled to Iraq in 2002. That puts Mr. Sachs in Iraq in 2002, but it doesn't indicate anything more than travel. It doesn't indicate that there was anything dealing with medical supplies. My question to you is, where is the showing of, where is the showing that he has standing to raise this issue because he, in effect, that is, he's, he has a threat that something's going to happen to him, not because of travel, but because of medical supplies at any time after 99. Where is that in the record? All right. First of all, at ER-6, we do allege, and I quote, on each trip, Mr. Sachs has brought medicine and medical supplies and distributed them to civilians. Were you at what line on ER-6? It would be paragraph 13 of the complaint, Your Honor. And your argument under 12b-6 is that we have to construe this as though it were true. Exactly. And more than that, looking at the Lujan and Steel Company cases, you apply the normal standards that would apply to any other allegations that went to the merits, which is complaint. Is a complaint enough, or does there have to be a declaration, some evidence to show standing? At this stage, according to Lujan and Steel Company, and we have cited that on page 39 of our brief, you apply the same standard that you would to 12b-6 in a 12b-6 that went to the merits. And so there's that great language about, at the pleading stage, general factual allegations suffice for a motion to dismiss. We presume that general allegations embrace those specific facts that are necessary to support the claim. And that's the nub of our position here, Your Honor. It wasn't our obligation to plead the precise dates in order to satisfy standing. We have obviously alleged a repeated pattern of conduct in traveling to Iraq. Now, we could amend, in truth. We could amend to meet the statute of limitations issue. But I think for purposes of 12b-6, we don't have to. The Court at this stage must presume that we have, that we could bring forth specific facts that would set forth standing. And the facts, based on the allegations, would be that Mr. Sachs has brought medical supplies to Iraq repeatedly throughout the course, you know, up to the point of the complaint. Well, I think you might have something stronger, and I'm going to lay it out here, so that the government can respond at the appropriate time. And that is in the penalty letter itself, where the government notifies Mr. Sachs that he's being assessed a $10,000 penalty. The government says that he's being assessed it based on his admission in his January 8, 1999 letter that he exported goods to Iraq absent prior OFAC approval, and also stated that he decided to violate the U.S. government's economic sanctions against Iraq as an act of civil disobedience. Well, the letter says that he brought medical supplies and toys to Iraq. And the government is recognizing that as an admission. And then also in that very same letter, so that's admitting that what you said, a recognition that what you said is true. And in its own letter, that letter, it also says it reserves the right to prosecute Mr. Sachs for other violations. Well, I think what it says, I'm not sure that letter says it, but if we're going to put it out. It says in the motion to dismiss, in a footnote, that although OFAC has not yet acted in response to plaintiffs' eight other trips to Iraq, it reserves the right to do so in the future. So could you address whether that, in connection with, as Judge Wardle properly noted as well, the letter, where the other, how that ties into medical as opposed to just trips, because the letter itself ultimately penalizes him for trips. And the language in the motion to dismiss talks about trips. Well, the language of the portion of the brief you referred to, Your Honor, is that it tracks almost identically language from a letter that the agency wrote in the Jacobus v. State of Alaska case. And specifically in that case, they wrote a letter that, quote, it reserved the right to prosecute any past violations. So that was enough in the view of the panel, the Ninth Circuit, in that case,  Getting back to what Judge Wardle pointed out, there's another, and this frankly didn't jump out at me when I was looking at the briefs. But not only has the penalty letter set forth the motive, if you will, or the animus underlying the decision, it actually construes the count. Now, count 6 ostensibly says it's about travel. That's right. But the language says you admit the notice's allegation in count 6 that you exported goods to Iraq. So it's at least ambiguous as to whether the penalty was for both the medical and the travel. That's exactly right. That's exactly right. And then you go on, of course, and Mr. Sachs is lumped in with Voices in the Wilderness, an unincorporated organization. You have a pending lawsuit that's been reduced at this point to judgmental. And Mr. Sachs has a fear that, of course, of collection efforts. And then you have the eight other trips. And, again, when you go back to the Jacobus case, the fact that there are past concrete examples of alleged violations, and specifically of bringing medicine to Iraq, that's enough to satisfy the first prong. And, again, that's what the Jacobus case teaches, because that case distinguishes Thomas, excuse me, by pointing out that we have something more than a mere possibility of a legal violation in the future. We have past violations there. And they are not merely for travel, Your Honor. They are there. They're violations in the sense of bringing unlicensed donations. Once you get past standing, the chips fall in Mr. Sachs' favor fairly quickly, because the Iraqi Sanctions Act quite clearly only ratifies executive orders that exempted humanitarian donations. True, those executive orders contemplate further regulation, but Congress insisted that those be brought to it before they took effect. The agency didn't do that. The district court dismissed that based on the in-race surface mining decision that's cited in its order. But that's a different situation. It wasn't a case where the agency refused to submit regulations for consideration. The agency didn't supply a report regarding possible congressional legislation of Indian Territory. And the legislative history of the statute told the agency to regulate Indian land in the interim. So that case does not stand for the proposition that when Congress tells the agency submit to us regulations before you approve them, that the agency may not do that. The same thing is true of the United Nations Participation Act. Again, that limits presidential authority to what is necessary to apply the measures. Now, the agency appeals to the President's overarching authority to make foreign policy decisions. And that's where the recent Hamdan v. Rumsfeld decision comes in. I think it merits some supplemental briefing. I'd ask the Court for that opportunity. But at its nub, that's exactly what happened. It was exactly the argument in Hamdan. The President argued that under his war-making powers, he had the authority to decide to invoke military commissions. The majority in Hamdan applied the familiar Youngstown Sheet and Tube and found that where the Congress has the authority to act, which it would have here because Congress has the constitutional authority to regulate trade with foreign nations, and where Congress has spoken, the President's power is at its lowest ebb, and notwithstanding that case involving the President's war-making powers, the President had to comply. And Hamdan, with all due respect, is dispositive of the appeals by the executive here to its discretion to decide how to conduct foreign affairs. At this point, with the amount of time left, I will sit if the Court has no questions. May it please the Court, I'm Thomas Byron from the Department of Justice, here on behalf of the government. Take a moment first to address Mr. Sachs' direct appeal, and I'll emphasize at the outset that there's no dispute here that Mr. Sachs violated the Iraq travel ban, the regulations that prohibit travel-related transactions, both to and within Iraq. There's no dispute that in his 1997 trip, he did violate those regulations. That's what he was sanctioned for. That's what the penalty notice states. It cites to the regulation that embodies the Iraq travel ban. It does not cite to the general export regulation, which includes the medicine restriction he complains of here. So the civil penalty that was assessed against him is fully warranted based on the authority that OFAC cited and relied on. Turn for a moment to his argument about what the district court here called the medicine ban, which is an exception to the general export restriction. And as the Court has noted, that exception is not a prohibition. It's a licensing requirement. Has the license ever been issued? I don't know, Judge Wardlaw. It's not in the record, and opposing counsel has emphasized repeatedly that the record here is quite limited. We don't have that information. It's also not relevant, because as a matter of constitutional standing under Article 3, Mr. Sack's failure to seek a license precludes him from challenging the licensing regulation. He has no case or controversy with respect to the licensing regulation. And that standing requirement under Steele Company must be addressed before reaching the merits. Now, I want to emphasize for a moment that we're not running from the merits in any way. We think the merits on the export ban and the licensing requirement for medical supplies are as clear as the merits on the travel ban. They are both amply supported by statute. Nevertheless, before this Court can address those questions, it must first address rightness in standing, the Article 3 barrier of case or controversy. And in that respect, it's not sufficient to point to artful pleading in the complaint. It's not sufficient to point to efforts to undermine the agency's own articulation of the basis for this civil penalty, which was the Iraq travel ban, nor is it sufficient to point to the possibility of further agency proceedings without identifying whether there's actually a risk of those proceedings taking place. He has declined to identify whether he's actually committed any violations within the period of the limitations. That failure is fatal, and artful pleading is no avoidance of Article 3. The – I'd like to emphasize for a moment that the principal argument made in Mr. Sachs' case is that travel is necessary to export medical supplies. It's just not – it does not hold water. After all, export of goods generally takes place through common carriage or other mechanisms that do not require travel to or within another country. And that's the principal distinction in operation between these two provisions. Mr. Sachs' choice to violate both of those provisions in traveling to Iraq in order to personally deliver the medical supplies and other goods does not avoid that fundamental distinction. It doesn't get him past that. He violated both. The agency made a prosecutorial discretion in its own judgment to pursue a penalty under the travel ban and not a penalty under the general export ban. That judgment is not appropriate. It should not be second-guessed by this Court or by a plaintiff. That's just discretion. That doesn't mean he's not at risk. The original notice, pre-penalty notice, lumps Mr. Sachs in with all of the people in Kelly, Handelman, Mullen, Sachs, and Zito. Actually, I don't – He is also – well, that's the opening, and then it goes to count. I appreciate it then narrows it down, arguably, in the balance of the notice. But nonetheless, what I'd like – prelude to where I'm going with this. That's prelude to where I'm going with this. It says that OFAC has reasonable cause to believe that you, these listed individuals, and voices in the wilderness have engaged in certain prohibited transactions detailed below. Now, he is a member of Voices in the Wilderness, which is an unincorporated association. So to the extent that there was a prosecutorial judgment to limit certain individuals, in any event, to travel-related and go after VW, as it's called, for the medical concerns, why doesn't he have sufficient risk? It's clear he's a target of the government. You just said he committed both violations. The government has exercised current discretion not to charge him with the medical side. But nonetheless, it's clear it's going after VW for the medical. And he, whether you get him directly or indirectly, he's within the sights of these regulations. So why isn't that enough to get over these standing hurdles? Just to make sure I understand your question first. If your question – I think what I understand you to be getting at is an indirect enforcement of the sanction that was issued against the association, against Voices in the Wilderness. But he'll be ultimately – he could be personally liable for whatever. But I don't know that – I don't know there's any evidence in this record or anywhere else. It doesn't have to be evidence. It doesn't have to be evidence. This is a 12b-6. Fair enough. I think there's not even a reasonable – a reason to believe that it's possible. The agency has made no effort to go after the individuals to enforce the penalty against the organization. They have clearly distinguished between the organization and its individual members in assessing those penalties, as this record does demonstrate. And the question of enforcement of that future penalty is not actually reflected – Let's suppose that what happens is that the organization is sanctioned. The organization has to come up with thousands of dollars in penalties. And Mr. Sachs is, as a member of that association, is assessed by the association for, say, $10,000 of those penalties. If he voluntarily pays that, Your Honor, he doesn't have standing – A member of the association. He's not – he has not alleged that the association's bylaws or other requirements could compel him to pay that fine. He has said in his brief in this Court that the agency, that OFAC, might try to come after him to collect the fine. But that's not an allegation in the complaint. It's not an allegation that actually has any basis in OFAC's past practices or in the record of Voices' case, let alone this case. It's simply not a basis for saying that he could be subject to the penalty for violating the license requirement for exporting medical supplies, as opposed to the travel ban. I'd like to make sure, however, that all of our discussion about the standing requirement, the standing and rightness elements here, don't cloud the fact that the export restriction and the licensing requirement are amply supported by the same authorities that the travel ban is supported by. And if the Court has any questions about the merits, I'd want to make sure we have an opportunity to discuss them today. It seems to me the merits are clear, as the Voices Court held. In the absence of any questions about that or any further questions about standing, I'd like to turn to the government's cross-appeal. And this cross-appeal challenges the district court's injunction against a Federal agency, and the injunction limits OFAC's authority to pursue statutorily authorized collection methods, administrative collection methods, through a private collection agency of a civil penalty that was assessed in the ordinary course of regulatory proceedings, and that by the definition set forth in the Federal Claims Collection Act is a claim that the Federal Government has against Mr. Sachs. It is a debt that he owes, as the statute defines that term. Kennedy. When you have a conflict between a statute and an administrative remedy regulation in which the government has restricted itself through the regulation as to how it's to function, what is the relation? And can the agency then just jettison its own regulation and follow a statute? Judge Wallace, I think it's not fair to say that the regulatory language that's at issue here constituted a restriction by OFAC on its own discretion. Well, when it's been – when the agency has been given specific ways of collecting and uses the mandatory term of shall, it seems to me the agency, through its regulation, has indicated how it's to function. You shall be – it shall – the matter shall be referred to the United States Department of Justice for appropriate action to recover the penalty in the civil suit in a Federal district court. I don't see how anything could be clearer that that regulation requires a certain method, in spite of other statutes that may be there. Well, I think it can't be in spite of, Judge Wallace. They have to be read together. And when read together, there's nothing in the language that you just quoted that precludes recourse to administrative collection methods. Why do they have to be read together? Even though the agency may have the power to do something, if the agency itself restricts how it's going to do it, it shall be referred to the Department of Justice. Why shouldn't we require the agency to follow its own regulation? I think, Judge Wallace, I continue to disagree with your premise. I don't read the language, shall refer, to restrict other methods. And that's the fundamental reason. Shall sounded pretty permanent to me. Maybe you can tell me why it's not. Well, there's a couple of reasons. One is that, as this Court's recognized, and the Supreme Court as well, shall in some contexts, when discussing prospective government discretionary action, can be nonmandatory. It can be the equivalent of may. Another reason, though, is that even if it is a mandatory term, even if shall refer is something inescapable, it does not mean it's necessarily also exclusive. In other words, mandatory does not always equal exclusive. Maybe the people who enacted this regulation wanted, had a purpose in mind with saying, yeah, we know we have all these other remedies out there. We can do these administrative collection remedies. But we, because of the nature of this act, it's a very large impact on humanitarian causes and other causes, and also its uniqueness in terms of United States history. We think that before this agency imposes a penalty upon someone for violating these medical and travel restrictions, they ought to have a day in court. Absolutely. That's a substantive, that is a substantive thing, having a day in court, as opposed to having to bring your own lawsuit. It's substantively different. Judge Wardlaw, it is absolutely not substantive, first of all. It is clearly procedural. In the very term. Excuse me, counsel. In my opinion, there is a qualitative difference between being able to defend yourself in court and assert the illegitimacy of the government's action and enforcing the government to be in the position, if it believes it has the right legal position, to enforce it before the third branch of government, and allowing a debt collection agency to run after anybody who gets a penalty notice, and then requiring them to be the one to sue the Federal Government. And let me add a footnote to it while you're answering it. It may be that they wanted the Department of Justice to look at it to make sure the agency was doing what it ought to do before it goes after these people rather than going directly to a collection agency. Now, maybe you can answer both of those. I'd like to do just that. And first of all, let me emphasize that the sequence is not quite the way that your question, Judge Wardlaw, portrayed it. The sequence is that after a civil penalty has been assessed, then the collection remedy takes place. Whether that collection remedy includes only a referral to the Department of Justice or also administrative collection remedies is thus the only question that's presented here. There's not a period before the assessment of the civil penalty by the agency. And remember, that assessment ---- There is. There is, actually. You get the pre-penalty notice. Yes. And then the person who gets the notice has a period. And in this case, Mr. Sachs admitted that he had provided the medical services and traveled to Iraq. And then the agency decides, so we're going to assess you a penalty. Boom. Now, if you just ship that off to a debt collection agency, that person is going to be harassed by a debt collection agency based on the decision of a government agency, and before the decision of the government agency is ever subject to any legal challenge at all. Yes. But that's exactly what the Federal Claims Collection Act, as amended by the Debt How would the Department of Justice enforce for its referral from OFAC? What would it do to collect the debt that is the equivalent of what a collection agency would do? There are a couple of choices that the department would have. And first of all, let me emphasize a couple of things about this referral that's described in the regulation, if I may. One is it is interagency communication. There's no indication that it's intended to confer a privately enforceable right. Well, it's significant, though, because the Justice Department has discretion upon referral. Let me tell you where I'm going with my questions so we don't beat around the bush and use up your time. The point is that there's a serious issue about the bona fides of this Act, this regulation. The smacks of the targets being pushed into a collection action where they try to raise the kind of challenges that are being made here in the context of an action involving a collection agency, as opposed to having the government through the Department of Justice. And we heard earlier today counsel from Assistant U.S. Attorney saying he wasn't authorized as a Montana Assistant U.S. Attorney to speak for the government. That had to be done by you folks back at Maine Justice in Washington, D.C. So there's a big difference here. And that's why I'm asking the question. There's a rationale conceivable here that, as Judge Wardlaw was suggesting, that because of the nature of this Act, they wanted the Department of Justice as the screener here, not just the agency kicking it out to a collection agency. So what's wrong with that? Scenario? Two answers. First of all, the Justice Department has two options, at least two options, under its own regulations implementing the FCCA, the Debt Collection Act. One is that it could refer it to a U.S. Attorney's office for direct enforcement proceedings in Federal district court. Another is that it could engage a private lawyer to engage in those same collection proceedings. Who would be making that decision? Civil division? Yes, Judge. Right. Headed by a political appointee, assistant attorney general? That's correct. Right. Now, who would be making the decision in the case of the collection agency procedure by OFAC? The OFAC director. Yes. I don't think there's any substantial difference. With or without consultation of the Department of Justice? Whether such consultation takes place is not a question for judicial review. That's interagency. That's what I was going to say. That's the whole point, isn't it? No, I don't. Isn't it likely that OFAC, maybe with Justice's input, decided, look, on this one, this is a hot potato issue. We don't want OFAC out there freelancing on this one. There's no reason to believe that. And the main reason that that's not appropriate, I'm running into my rebuttal time and I don't want to take it all up. The main reason is that the agency has consistently interpreted this regulation in the same way in all three of the sanctions regulations in which it appeared. And that way was not to be exclusive. And that consistent agency practice is entitled to recognition in this interpretive question, and the deference is due to that agency interpretation as is the rest. Even though it put the other option in all the other collection opportunities it just left it out of this one. No, Your Honor, it left it out of three. Let me be clear. It left it out of Iran, Iraq, and Libya. And there's every reason to believe that that was just a mistake and that that mistake was clarified last year. I'd like to save the additional time. There's no reason to believe that. What in the record is there to support that statement? To support the statement that this specific language, the matter shall be referred to the United States Department of Justice for appropriate action to recover the penalty in a civil suit in a federal district court. That means get the attention of a federal district judge. You think that was a mistake? There's every reason to believe that was a mistake? No, Judge Wardlaw. I think that the omission of administrative collection procedures from that regulation was not significant. That's what I meant by that statement. Thank you. Just a few points on the issue of the extrajudicial collection. First, I thought I would point out the agency, the government here, contests what it once conceded. And if you look at the Lawrence v. Commodity Futures, the Ninth Circuit decision cited by the agency, that issue was then 7 U.S.C. Section 9A. That had language just like this regulation. It required referral to the agency. And they're the agency, and it's a different agency, the government. But the government conceded that that required, that that statute required them to submit it to the Justice Department. It so happened there was a separate statutory authority to proceed in another way, and this Court relied on that. You didn't raise this issue yourself, did you? I'm sorry? You did not raise this issue, collection issue, yourself? I mean, in the complaint? Yes. Or? Frankly, we did. I should have broken this up, and this is counsel's fault. We raised the statute of limitations issue. And the idea in the complaint is these, this agency has not commenced a civil action in a timely fashion. Therefore, they're barred from bringing one. And then the district court broke that issue out, and I think rightly so, into these two different issues, and obviously ruled that the five-year statute applied, and then dug deeper into this issue. It does seem to me that the agency's argument here should be familiar to that of any parent of a small child. And when I tell my child, go to bed, I don't mean, and by the way, go to the neighborhood and visit your friends and do that. That's the kind of argument we have. Let me ask, because the clock is ticking. Sure. I want to make sure I get clear on the exposure of Mr. Sacks as a member of the organization. Since we're going on 12B-6, what's the evidence that he has any financial exposure other than personal for the travel-related expenses that will somehow be different if it's under the medical side, where they might go through the organization to reach his pocketbook? So what's the difference? The difference is in the complaint. It is that you mentioned. It was an unincorporated association. But so what? What do we make out of that on this record to find some immediate impact or likely immediate impact on him? The so what is, and the Court frankly pointed it out, that they are jointly being that say that a member of an unincorporated association is liable for a judgment against the association. Beyond that. Can that be under Washington State law? I mean, if I were to do some research on that, are you saying, are you invoking Washington State law for that principle? You know, I am not, Your Honor. I am looking to Federal case law. Let me ask a question on this. Yes. If you went back now, if we said that we found in your favor on the cross-complaint, you went back now, now you would be faced with a regulation that says you can go to a collection agency. It seems to me that some question ought to be responded to from you on this basis. In our cases, we have one called Anderson v. Allstate, in which we had no jurisdiction because the judgment wasn't final. Then during the time it got up to us, it became final. We didn't send it back. We just decided we have jurisdiction. Why shouldn't we say let's not get to this cross-claim? If it goes back, it's going to go to collection. Why can't we just say that we'll take it as it is now? That is, why should we send it back and start all over again in the district court when we know what's going to happen when it gets back under the new regulation? There's a couple of reasons. One is the clock is ticking. And as time passes and no administrative or other enforcement actions are presented, the opportunities for the agency narrow over time as this case proceeds to bring the new regulation. The statute of limitations runs and your client wins. Well, that's right. But as I envision this going down, and I hope this answers the question, as I envision this going down, we would have a ruling that the agency had no authority to enforce the so-called medicine restriction, and then could not pursue any administrative or civil proceedings against them within that 5-year period, and then further that no administrative proceedings under the pending case could continue, because we have the existing regulation. And there's a question that really isn't before the Court, but the parties have alluded to, as to whether this revision of the regulation has retroactive effect on that. If we found in your favor on the cross-claim, that means that the government cannot pursue it, would we just decide that issue and not have to decide any other issue, because the final issue is the government may not collect? As you know, because we have the issue, and this gets to the pre-enforcement review discussion. We still have the other trips, some of which are within the statute of limitations, Your Honor. And the issue is going to be whether and under what circumstances those may be enforced against Mr. Sachs, under circumstances where the agency has expressed no disinclination to continue to enforce them. Are you leaving some time for Mr. Sachs? According to this, very little. But I would like to at this point, if no further questions, allow Mr. Sachs a moment. Mr. Sachs, you may have two minutes. Thank you. Thank you for allowing me to address the Court. I'd like to address the key issue that you asked. Why didn't I make a request for a license from the Office of Foreign Assets Control? I made my first trip in 1996, and six months before, I saw on television Madeleine Albright speaking to Leslie Stahl when 60 Minutes went to Iraq. They saw all the things that I was going to see six months later. I saw Leslie Stahl ask Madeleine Albright, We've heard that 500,000 Iraqi children have died. That's more than died in Hiroshima. Is it worth the price? I listened to Madeleine Albright, then our U.N. ambassador, answer, It's a difficult decision, but yes, we think it's worth the price. I saw that on television, and I asked myself two questions. One is, can a country, even a democratically organized country, commit massive destruction of infrastructure, cause deliberately massive suffering of civilians, and do this legally? And the second question I asked myself as a private citizen of the country is, What can I do about this? So it's not an oversight that I never requested a license. In fact, the opposite. When I came back in 1996, I thought, What can I do? What is my responsibility as a citizen of this country? And I went to the U.S. federal attorney. She said she wouldn't help me to prosecute me, but I didn't give up. I went to the FBI and finally the Office of Foreign Assets Control. I said, I would like you to prosecute me for bringing medicines to Iraq. It took almost ten years, and my belief was that if I could get into U.S. court of law, where the rules of evidence are what governs, I could begin to help Americans realize, which I think is not in question, that the deliberate bombing of Iraq's civilian infrastructure, their electricity, the reimposing of sanctions, the knowledge that this was causing massive death, 47,000 deaths in just eight months, and that we were using this as a tool of our foreign policy, I believe that if I could get that into a court of law, I would stand some chance of being a responsible citizen in a country that I believe has done one of the massive human rights violations of the last decade. I see my time is up. Thank you. Thank you very much, Mr. Sachs. The case of Sachs v. Office of Foreign Assets Control is submitted, and this session of the court is adjourned for today. All rise. This court for this session stands adjourned.
judges: Wallace, Wardlaw, Fisher